**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 11-cv-02072-MSK

In re

**LAWRENCE ALEXANDER DONNELL,**

     Debtor.

**CATHERINE C. NEWMAN;
THE CATHERINE C. NEWMAN LIVING TRUST #1; and
CATHERINE C. NEWMAN, TRUSTEE,**

     Plaintiffs-Appellees,

v.

**LAWRENCE ALEXANDER DONNELL,**

     Defendant-Appellant.

---

**ORDER AFFIRMING BANKRUPTCY COURT'S RULING**

---

**THIS MATTER** comes before the Court on Debtor Lawrence Alexander Donnell's Notice of Appeal **(#1)**, filed on August 8, 2011. Mr. Donnell appeals the judgment entered on July 27, 2011 by the United States Bankruptcy Court for the District of Colorado in an adversary proceeding in his Chapter 7 bankruptcy case. After full briefing by the parties **(# 21, 23, 24)**, the Court heard oral argument on August 23, 2012. The Court now rules as follows.

I. Jurisdiction

This Court has appellate jurisdiction to review final orders and judgments of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1), (c)(1).

II.  Background

This adversary proceeding concerns a claim by the Plaintiffs that Mr. Donnell fraudulently obtained $200,000 from them in exchange for two unsecured promissory notes.  The Plaintiffs allege that the debt resulting from that loan is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

During the relevant time period, Mr. Donnell was an investment advisor and representative of Securities America Advisors, Inc.  In 2007, Plaintiff Catherine Newman contacted Mr. Donnell for help in consolidating more than $3.1 million of her investment assets into a single account.  After meeting with Mr. Donnell, Ms. Newman (and her living trust) opened a brokerage account with him and signed a registered investment advisor client agreement.

Thereafter, Mr. Donnell and Ms. Newman met on a weekly basis, often in the presence of Ms. Newman's children.  Over the course of their relationship, Mr. Donnell learned that Ms. Newman, an elderly woman, was an experienced investor and that her investment strategy was cautious, conservative, and risk-adverse.  However, at one of their meetings, Ms. Newman and her son asked Mr. Donnell about possible investment opportunities that could possibly yield a considerable return on investment.  Mr. Donnell said he knew of many such investments, but they were not the kind of opportunities that he would typically present in his capacity as Ms. Newman's broker or investment advisor.

On January 4 2008, Mr. Donnell informed Ms. Newman of an opportunity to lend $100,000 to a new company called JOAD Perscitus Placitum LLC ("JOAD"), in exchange for receiving two promissory notes.  One of the notes matured in one year, accruing interest at 8%

per year, and the other note matured in two years, accruing interest at 8.5% per year.  Each note had interest-only payments due every six months.

The details of discussions leading up to Ms. Newman's involvement in JOAD are somewhat in dispute, although it is clear that at any particular meeting with Mr. Donnell, no more than a few minutes was spent discussing the JOAD loans or the risks involved.  Mr. Donnell alleges that he told Ms. Newman and her children from the start that he had an ownership interest in JOAD (in fact, he was one of only two principal members).  He also alleges that he told them that this was not a customary investment that he would present, and that they should do their own investigation of the investment.

At the time Mr. Donnell proposed the loans to Ms. Newman, JOAD was trying to establish a franchise called The Intelligent Office.  Mr. Donnell's partner, Janet Otto, was responsible for setting up the business with the franchisor, while Mr. Donnell was responsible for raising necessary funds.  Unbeknownst to Ms. Newman at the time, JOAD had been having significant problems with its franchisor since the summer of 2007.  Indeed, the relationship with the franchisor was so strained that JOAD had considered suing the franchisor.  Further, JOAD had been struggling to raise funds to build its facility, and at the time Mr. Donnell approached Ms. Newman for an "investment," the business was still months from opening its doors.  By the fall of 2007, Ms. Otto was already losing confidence in JOAD's business plan, and by December 2007, JOAD had large bills that it did not have the cash to cover.  When Ms. Newman actually made the $200,000 loan to JOAD, the business was already "on shaky ground."

In 2009, when the first note became due, Mr. Donnell went to Ms. Newman and told her that JOAD would not be able to pay on the promissory notes.

Later, Mr. Donnell filed for personal bankruptcy. The Plaintiffs then initiated this adversary proceeding against him. As relevant to this appeal, the Plaintiffs claimed that Mr. Donnell fraudulently obtained the loan from Ms. Newman by failing to disclose material facts about the loan, and the resulting debt from that loan was nondischargeable under 11 U.S.C. § 523(a)(2)(A).

After a bench trial, the bankruptcy court issued an oral ruling, finding that the Plaintiffs established their claim for fraudulent nondisclosure. It awarded judgment in favor of the Plaintiffs in the amount of $161,874.53, plus interest.

### III. Statement of the Issues

Mr. Donnell presents two issues on appeal. First, he contends that the bankruptcy court erred in failing to require Ms. Newman to a certificate of review in compliance with section C.R.S. § 13-20-602. Second, Mr. Donnell contends that the bankruptcy court erred in failing to adequately consider his meritorious waiver defense to plaintiffs' fraud claim.

### IV. Standard of Review

This Court reviews the bankruptcy court's legal conclusions *de novo* and its underlying factual finding for clear error. *In re Paige*, 685 F.3d 1160, 1178 (10th Cir. 2012).

### V. Analysis

For purposes of the following analysis, the Court assumes that the bankruptcy court has jurisdiction to resolve state law claims in an adversary proceeding and to award money damages for those claims. The Court now turns to the issues presented on appeal.

#### A. Certificate of Review

Mr. Donnell contends that the bankruptcy court erred in failing to require Ms. Newman to

4

produce a certificate of review in compliance with C.R.S. § 13-20-602.

As relevant here, section 13-20-602 applies to all actions for damages "based upon" the alleged professional negligence of a licensed professional, and requires that the plaintiff's attorney to file a certificate of review with the court. C.R.S. § 13-20-602(1)(a). Generally, the certificate of review must state that (1) the attorney consulted an expert in the area of the alleged conduct, and (2) the expert reviewed the relevant facts and concluded that the claim does not lack substantial justification. C.R.S. § 13-20-602(3)(a). The statute applies not only to negligence claims, but to every claim that requires proof of professional negligence as a predicate to recovery. *Martinez v. Badis*, 842 F.2d 245, 252 (Colo. 1992). Failure to file a certificate where one is required will result in dismissal of the complaint. C.R.S. § 13-20-602(4).

Mr. Donnell first raised this issue in his motion for summary judgment. He argued that the Plaintiffs' allegations of fraud were based on Mr. Donnell's status as a licensed investment advisor and his breach of professional duties owed to Ms. Newman. Thus, he argued, expert testimony was necessary to define the scope of his professional duties. The bankruptcy court acknowledged that a certificate of review would be necessary to the extent that the Plaintiffs' claims were based upon Mr. Donnell's breach of the duty of care owed by an investment advisor to his clients, but, the court ruled, "several of the fraud scenarios raised by Plaintiffs' complaint do not involve a breach of this duty."

Mr. Donnell essentially repeats that same argument before this Court. He argues that a certificate of review was required because the Plaintiffs' claim of fraud is "based exclusively on Donnell's alleged breach of his professional duties" owed to Ms. Newman. For support, Mr. Donnell points out that the parties and the bankruptcy court evaluated Mr. Donnell's actions in the context of his position as a licensed investment advisor.

Under Colorado law, to prevail on a claim for fraudulent nondisclosure, a plaintiff must show that the defendant failed to disclose a fact that he had a duty to disclose, with the intent to induce the plaintiff to take a course of action he would not have otherwise taken, and that the plaintiff justifiably relied on the omission. *See Alpine Bank v. Hubbell*, 555 F.3d 1097, 1109 (10th Cir. 2009); *see also In re Riebesell*, 586 F.3d 782, 791 (10th Cir. 2009) (fraudulent nondisclosure constitutes a "false representation" under § 523(a)(2)(A)). To determine the circumstances under which a duty to disclose arises, the Colorado Supreme Court has looked to Section 551 of the Restatement (Second) of Torts for guidance:

> One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> (a) matters known to him that the other is entitled to know because of a fiduciary *or* other similar relation of trust and confidence between them, and
>
> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement from being misleading[.]
>
> . . . . (Emphasis added.)

*See Alpine Bank*, 555 F.3d at 1109 (citing *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111 (Colo. 1998)); *see also Mallon Oil*, 965 P.2d at 111 ("A defendant has duty to disclose to a party with whom he or she deals material facts that in equity or good conscious should be disclosed.").

Here, the complaint alleges that Mr. Donnell fraudulently obtained the loan because he failed to disclose material information that "he had a duty to disclose." The complaint does not allege that Mr. Donnell's duty to disclose specifically arose from his fiduciary relationship with Ms. Newman that grows out of his role as her investment advisor. Thus, while it is true that the Plaintiffs' claim of fraud required a finding that Mr. Donnell had a duty to disclose, that duty

6

could have arisen from his status as borrower (an officer of JOAD) from Ms. Newman, rather than from his role as Ms. Newman's investment advisor.

Indeed, as the bankruptcy court found, Mr. Donnell had a duty to disclose that was separate from his role as investment advisor. In this instance, Mr. Donnell was not acting in his capacity as Ms. Newman's investment advisor; rather, he was acting as an officer of JOAD and a party to the transaction. And because he also had an established relationship of trust and confidence with Ms. Newman, it was expected by the parties that Mr. Donnell would disclose to her material facts about JOAD that were known to him before entering into the transaction on JOAD's behalf. Although the bankruptcy court incidentally found that Mr. Donnell acted as a fiduciary for Ms. Newman in this transaction, that finding was not necessary to find in favor of plaintiffs on their fraud claim: as the bankruptcy court stated, "***whether or not*** Mr. Donnell was acting as [Ms. Newman's] fiduciary . . . he was acting in a position of carefully nurtured trust with special knowledge of the risks of JOAD that were unknown to Ms. Newman") (emphasis added).

Because Ms. Newman's claim did not require proof of professional negligence as a predicate to recovery, the Court concludes that section 13-20-602 is inapplicable and that the bankruptcy court correctly determined that a certificate of review was not necessary.

### B.  Waiver

Next, Mr. Donnell contends that the bankruptcy court erred in failing to properly consider his affirmative defense that Ms. Newman had waived her fraud claim against him.

At the close of evidence at trial, Mr. Donnell moved to amend his answer and add several affirmative defenses, including waiver. The bankruptcy court took the motion under advisement.

In its oral ruling, the court granted Mr. Donnell's motion, but found that the added defenses had "no bearing on the outcome of this adversary proceeding."

Mr. Donnell now argues that the bankruptcy court erroneously failed to address his waiver defense. Further, Mr. Donnell argues that had the court considered this defense, it would have found that Ms. Newman had waived her fraud claim, thereby wiping out any threshold debt under § 523. Mr. Donnell alleges that waiver was established because the record shows that Ms. Newman knew that Mr. Donnell had an ownership interest in JOAD and that she also knew that JOAD was a start-up company. Despite that knowledge, it is argued, Ms. Newman elected to go through with the loan to JOAD.

Admittedly, the record is somewhat ambiguous about the degree to which the bankruptcy court considered Mr. Donnell's waiver defense. The court's statement that Mr. Donnell's defenses did not affect the outcome of the proceeding is indicative that the court at least considered the defenses, even though it did not expressly discuss them. Assuming, however, that the bankruptcy court failed to adequately consider Mr. Donnell's waiver defense, this Court nevertheless finds that the error was harmless because that defense is meritless.

Waiver is an affirmative defense to state law fraud claim. *Elk River Assocs. V. Huskin*, 691 P.2d 1148, 1153 (Colo. App. 1984). To establish ratification and waiver, the evidence must show that the defrauded party, with full knowledge of the truth regarding the false representations (or, as here, the nondisclosure), nevertheless elected to continue to carry out the agreement. *Id.* at 1153.

Here, the bankruptcy court ruled that the Plaintiffs had successfully established a claim for fraud based on Mr. Donnell's failure to disclose to Ms. Newman certain facts about the "investment" that amounted to substantial risk. Although the Court agrees with Mr. Donnell that

Ms. Newman may have known that Mr. Donnell had an interest in JOAD and that JOAD was a new company, there is nothing in the record to establish that Ms. Newman knew that: (1) JOAD was having significant problems with its franchisor, or (2) that JOAD did not have the financial resources to cover its costs.  These facts are undoubtedly material to Ms. Newman's consideration of whether to lend money to JOAD.  Thus, because Mr. Donnell cannot establish that Ms. Newman had full knowledge of all material facts when she made the decision to invest, his waiver defense must fail.  Thus, the Court concludes that any error made by the bankruptcy court in not considering this defense was harmless.

## VI.  Conclusion

For the forgoing reasons, the judgment entered in favor of plaintiffs on July 27, 2011 by the United States Bankruptcy Court for the District of Colorado is **AFFIRMED**.

Dated this 28th day of September, 2012.

**BY THE COURT:**

_Marcia S. Krieger_
_____

Marcia S. Krieger
United States District Judge